St. Louis, Iron Mountain & Southern Railway Company *v.*

Reed.

Opinion delivered December 21, 1908.

1. Trial—singling out instruction.—Where the jury returned into court and asked to have the instructions read to them, it was error for the court to single out one of the instructions, which was correct in itself but contained only part of the law, and read it alone, and then say, "That ought to be plain enough for anybody; there is no reason for misunderstanding that by any one." (Page 465.)

2. Appeal—bill of exceptions—marginal note.—A marginal note appended to a bill of exceptions, as copied in the transcript reciting that something appearing therein is erroneous will not be considered by the court where there is nothing to show that the trial judge made the annotation or intended to reject the matter referred to. (Page 466.)

Appeal from Marion Circuit Court; *Brice B. Hudgins,* Judge; reversed.

STATEMENT BY THE COURT.

Reed was a section hand, in the employ of the St. Louis, Iron Mountain & Southern Railway Company on its White River

branch, near Yellville, in Marion County.  Several of the section crew were returning from work on a hand-car furnished by the railroad company, and Reed and three of his companions were pumping when the lever bar, or upright iron supporting the handle, broke, and he was thrown from the car and injured.  He sued the railroad company, and his complaint alleged that the railroad company disregarded its duty to use ordinary care and prudence in furnishing him with a reasonably safe and secure hand-car for the purpose of conveying him to and from his work, and to use ordinary care and diligence in keeping the same in a reasonably safe and secure condition, in that the lever was defective, and was known to the defendant to be defective, or could have been known by the defendant to have been defective by the use of ordinary care; and that it was unknown to the plaintiff.

The answer denied these allegations, and, stated that if there was a defect in the lever bar the same was as patent to the plaintiff as to the defendant.  The plaintiff's evidence in regard to the cause of the accident was in substance as follows:  He testified that he saw no flaw or crack in the iron, and that he thought it was safe.

Robert Richardson testified that he examined the lever bar after it was broken; that the break occurred about half-way between the handle and where the lever bar was fastened to the car. That at the point of this break there was a sand-hole on the top side of the broken bar, just a little way from the edge.  The sand-hole had a little shell or scale over it.  That the sand-hole was about the size and shape of a pencil.  The upper part of the broken handle bar appeared to have in it an old crack.  Between the sand-hole and the surface it seemed to look a little rusty. That the crack could not be seen from the outside.  He does not think the crack was deep enough to be discovered on observation, and the sand-hole was out of sight.  That the rusty streak appeared to reach from the sand-hole to the surface.  That this could not have been detected by looking ever so close to it.  He does not know whether a mechanic or inspector could have seen it or not.

Keeter testified that the lever bar was broken square in two, and on the inside there was a vacancy about like a lead pencil. The bar was about two and a half inches through, and this hole

was on the inside. It ran lengthways of the bar. The hole was right where the bar was broken. It was about the size of a lead pencil, and some two inches in length. The hole appeared not to be in the center of the bar, but a little to one side, and there was a place that looked like it had been cracked before. That was close to the thin side. This crack was about half an inch long. If the two broken pieces are put back together, no one could see the crack there, leading to the hole inside. He does not think an ordinary examination would discover it. This crack reached to the surface, but the hole was in the heart of the iron. He says: "I do not think any one could have seen the sand-hole or the crack. Q. Was that a hollow on the inside of the iron, and this crack reaching out to the outer edge? A. Yes, sir, it was all on the inside of the iron." He thinks the rusted streak came to the surface at one little point, but it could not have been easily seen.

Willard testified as an expert, and said: "If there was a crack an eighth of an inch long, you could see it with the eye; but if there is a sand-hole on the inside you have to detect that by hammering. Q. A sand-hole could be detected by hammering? A. Yes, sir." He says that with the hammer test a flaw of a half-inch could be detected. That in a piece like the one exhibited a sand-hole an inch or an inch and a half long could be detected. Then the court asked this question: "Could you find a flaw in it the size of this pencil? A. No, sir."

On behalf of the defendant, it was testified by Issa Ensley, the section foreman, who examined the lever, that the crack did not show on the surface, and it was not rusty, but that it was all freshly broken. The roadmaster testified that no kind of inspection could have detected this flaw. It was also shown that this car had been in use about a year, and that it was of the Buda make, one of the best hand-cars in use. Following is the testimony of an expert, S. C. Collins, introduced by the defendant: "My name is S. C. Collins. I am a mechanical engineer; have had twenty years' observation and study. There is no known test by which this flaw could have been discovered, that is ordinary test. It might be done in a terrial machine. To test or discover it by a hammer test it would require a much larger hole than this in the other piece of the bar; it would have to be two

or three inches long. The torsion test is a test made by twisting, but is seldom used. Hand-car levers are sometimes made of malleable iron; usually they are made of cast iron. I see nothing wrong with this piece of iron. It is a very close grained piece of cast iron. The flaw in this piece of iron is what is commonly called a cold shot. This cavity, by being smooth on the inside, was probably full of some substance, and when it broke the substance likely dropped out. This defect could have been discovered by making a hammer test, and possibly could have been detected by a mechanical eye if the old break came to the surface. I am working for the defendant. This defect is what we call a structural defect."

The court gave instructions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, which are as follows:

"Gentlemen of the jury: This is an action by Thos. C. Reed against the St. Louis, Iron Mountain & Southern Railway Company, defendant, to recover damages for alleged injuries claimed to have resulted to him on account of being thrown from a hand-car on or about the 23d day of November, 1907, while said plaintiff was in the employment of the defendant. The plaintiff alleges in his complaint that there was a lever bar on said hand-car, and that it was defective, which caused it to break, resulting in the alleged injuries complained of, and that the defendant neglected to use ordinary care and prudence in furnishing him with a reasonably safe and sound hand-car and appliance thereunto belonging, and neglected to properly inspect the same at reasonable intervals of time in order to ascertain its condition. The defendant denies any negligence on its part with reference to said hand-car and appliances, and denies the injuries as claimed by the plaintiff, and these are the issues which you are called upon to try. The burden of proof is upon the plaintiff to establish by a preponderance of the evidence negligence on the part of the defendant and the injuries, if any, resulting to him by reason thereof.

"2. You are instructed that it was not the duty of an employee to inspect the appliances of the business in which he is engaged, to see whether or not there are any latent defects that render their use more than ordinarily dangerous, but is only required to take notice of such defects or hazards as are patent or

obvious to the senses. The fact that he might have known of defects, or that he had the means and opportunity of knowing of them, will not prevent him from a recovery unless he did in fact know of them, or in the exercise of ordinary care ought to have known of them. It is the duty of the employer to exercise ordinary care and prudence in making reasonably careful examinations, searches or inspections at reasonable times by a competent inspector for hidden defects in appliances furnished to employees which can be discovered by a proper inspection by a competent inspector.

"3. You are instructed that an employee has the right to assume, in the absence of knowledge to the contrary, that the appliances which he is called upon to use in the performance of his work are reasonably safe; and if there are latent or hidden defects, or other defects of which said employee has no knowledge, or which are not obvious to him while using ordinary care and prudence, then he does not assume the risk attendant thereon.

"4. You are instructed that if you find from the evidence that the plaintiff was in the employment of the defendant as a section hand at the time and place of the alleged injuries complained of, and that in the course of his employment he was furnished a hand-car by defendant to be used in his work for it, and that while he was lawfully on said car in the course of his employment the lever bar was defective and broke by reason thereof, and that such defective condition was neither known or could have been known to plaintiff by the use of ordinary care and prudence, and if you further find that such defective condition, if any, of said lever bar could have been discovered by defendant by the use of ordinary care and diligence, and by a proper inspection, search or examination of said hand-car, and that the defendant failed and neglected to use such care and diligence, and if you further find that the injuries complained of resulted from such failure on the part of the defendant, you will find for plaintiff."

The 5th was as to the measure of damages.

"6. I charge you that there is no presumption that the company has been guilty of any negligence, arising from the fact that an accident has occurred and that an employee has been injured or killed.

"7.  I instruct you that a master is required to use ordinary care to furnish his servants a safe place to work and to discover defects in his tools or appliances and repair them; the burden is upon the injured servant to show negligence in this regard, which will not be inferred merely from the occurrence of the injury; therefore, before you would be authorized to find for the plaintiff in this case, you must find from a preponderance of the evidence that the railway company failed to use ordinary care in selecting the hand-car, and that it could, by the exercise of ordinary care, have discovered the defect in that part of said car which broke and thus caused plaintiff's injury.  I further instruct you that, before you would be authorized to find for the plaintiff in any sum, you must find from a preponderance of the evidence that the defect in the iron was known to the railway company, or that it might have been known by the exercise of reasonable care.

"8.  I charge you that the burden of proving negligence in this case is upon the plaintiff; and, before you would be authorized to find for the plaintiff in any sum whatever, you must find from a preponderance of the evidence that the defendant railway company was guilty of some negligent act.

"9.  I instruct you that the railway company owed to the plaintiff only the duty to search for any hidden defect that might have been in that part of the hand-car that broke and caused the injury to the plaintiff; and, before you would be authorized to find for the plaintiff in any sum, you must find from a preponderance of the evidence that defendant or its employees failed to use ordinary care to search for or discover any defect that might have existed.

"10.  I instruct you that by reasonable care to discover defects as mentioned in these instructions, the law means such care as a man of ordinary prudence and judgment would give to the hand-car lever in question.

"11.  I instruct you that a railway company fulfills its duty to its servants in regard to the inspection of its machinery if it adopts such tests as are ordinarily in use by prudently conducted roads engaged in like business and surrounded by like circumstances."

The plaintiff recovered judgment, and the railway company has appealed.

*T. M. Mehaffy* and *E. B. Kinsworthy,* for appellant.

1. The duty of railroads in regard to latent or structural defects is defined in 83 Ark. 323; 166 U. S. 617. The burden of proving that defendant had not discharged its duty in this respect was on plaintiff. 4 Thompson on Negligence, § § 3803 and c.; 79 Ark. 437; 51 *Id.* 468; 46 *Id.* 555; 83 *Id.* 323.

2. It was error to single out instruction 2 and read it to the jury and add remarks thereto, without reading all the instructions. 1 Heisk. (Tenn.), 202; 2 Baxter (Tenn.), 326; 11 Enc. Pl. & Pr. 283-5; 1 Blashfield on Instructions, sections 111, 177; 60 Ill. 32; 73 Ark. 148; 31 Kans. 58; 8 Col. App. 110; 71 Ark. 38; 76 *Id.* 232.

3. Instruction No. 2 does not state the law correctly. 77 Ark. 200; 65 *Id.* 64; 74 *Id.* 585; 79 *Id.* 428; 76 *Id.* 227; 74 *Id.* 437; 83 *Id.* 202; 65 *Id.* 98.

*Seawel, Jones & Seawel,* for appellee.

1. The evidence is sufficient to support the verdict. The appearance of a crack or flaw in a bar at the time it broke as well as its condition are matters for the jury in deciding whether or not the defect could have been detected or discovered by proper inspection. 82 Ark. 372; 78 Tex. 486; 146 Mass. 586; 138 *Id.* 426; 26 Cyc. 1142.

2. The inspection must be proper and by a competent inspector. 48 Ark. 347; 51 *Id.* 479; 67 *Id.* 305; 87 Ark. 217; 82 Ark. 372; 26 Cyc. 1142. Instruction No. 2 is the law, and the remarks of the judge had no reference to the evidence or merits of the case. 75 Ark. 380.

3. No request was made to read the other instructions—they had been read *twice.* 47 Ark. 407. The verdict was responsive to the evidence, and not to extraneous matters. 83 Ark. 384; 84 *Id.* 87-8.

Hill, C. J., (after stating the facts.) This is a suit by a section hand to recover for injuries received upon a hand-car, due to the breaking of the lever bar; and the case turns upon whether a proper inspection would have disclosed the defect. The substance of the testimony on both sides will be found in the preceding statement, and the instructions are also therein set out. It is doubtful whether the court would permit the verdict to

stand upon this evidence, weighed by the principles announced in
*St. Louis & S. F. Rd. Co.* v. *Wells,* 82 Ark. 372, and *Ultima
Thule, A. & M. Ry. Co.* v. *Calhoun,* 83 Ark. 318. But, as the
judgment will have to be reversed upon another matter, and the
evidence may be more fully developed upon a new trial, the court
will not pass upon the sufficiency of it as found in this record.

The bill of exceptions shows the following: "Be it further
remembered that at the trial of said cause, after the evidence had
been closed and the instructions of the court read to the jury and
the argument of counsel, the jury retired to consider of their
verdict and returned into court and asked to have the instruc-
tions read to them by the court, ·which was accordingly done.
That later the jury returned into court a second time, whereupon
the court read to the jury instruction No. 2 aforesaid, and added
thereto the following words 'By a competent inspector,' being the
last four words of said instruction as above set forth. And
thereupon the court made the following statement to the jury:
'That ought to be plain enough for anybody; there is no reason
for misunderstanding that by any one.' And to the action and
ruling of the court in reading only instruction No. 2 as aforesaid,
and adding said words to the same, and in making said statement
to the jury, the defendant at the time excepted and caused its
exceptions to be noted of record."

This action of the court was equivalent to submitting the
whole case upon instruction No. 2. Unless the jury had specif-
ically asked for instruction No. 2, it should not have been read
without reading all of the instructions. Instructions must be
taken as an entirety. It is only when the jury fails to understand
a certain one, and do understand the others, that one should be
read over to them without reading the others; and even then the
judge should caution them that all of the law of the case is not
given in that one, but that it is only covering that particular phase
of the case with which it deals. The court only read this one
instruction when there was no request for it alone, and this over
the objection of the defendant to giving it alone, and the court
emphasized it by adding a few words thereto, and then telling
the jury that it "ought to be plain enough for anybody," and
that there was no reason for misunderstanding that by any one.
The jury would naturally and properly infer from the court's

singling out this instruction and making additions to it, and making these remarks in regard to it, that the whole case was determinable by it. The instruction is of itself correct. But there are many matters proper for the jury to have considered that are not therein mentioned, but which are mentioned in other instructions. For instance, the statement that the burden of proof was upon the plaintiff to establish by a preponderance of the evidence negligence on the part of the defendant, and that there was no presumption that the company has been guilty of negligence from the fact that an accident has occurred through which an employee has been injured, were all matters proper for the jury to consider which are not mentioned in this instruction. Nos. 9 and 11 were also correct and useful instructions that are not covered by No. 2. These are but illustrations of the necessity of giving all of the instructions, instead of singling out one. The court had thought it was necessary to give eleven instructions in order to cover the whole law of the case. While there is a good deal of repetition in them, and they might have been condensed, yet they are not all condensed in this instruction No. 2.

On the margin of the record that has heretofore been copied is marked, "This is error." The transcript is made up in typewriting, and this marginal note is written with a pen. Other notes in the same handwriting such as "Instructions of the court" the names of the witnesses, etc., appear upon the margins of the transcript.

Appellee moves to strike out this part of the record, and contends that this marginal note was intended by the judge as a nullification of the statement in the bill of exceptions; but the court can not so consider it. If the judge had intended to reject this part of the bill of exceptions, he would have cut it out, and not indicated its error by such marginal references; and it is not shown that this note is made by the judge, and its appearance clearly indicates that it was not.

For the error indicated, the judgment is reversed and the cause remanded.