[APRIL TERM 1929]

## STATE v. SHINOVICH
(No. 1550; April 3, 1929; 276 Pac. 172)

176

*John Dillon,* for appellant.

*William O. Wilson,* Attorney General, and *Richard J. Jackson,* Assistant Attorney General, for respondent.

RINER, Justice.

This is a proceeding by direct appeal to review a judgment of the District Court of Fremont County, entered upon the verdict of a jury at the conclusion of appellant's trial upon an information charging him with the crime of perjury alleged to have been committed at a coroner's inquest in said county on February 9, 1927.

One Hobart Haynes on that date lost his life in consequence of a gun-shot wound. The coroner immediately conducted an investigation to determine the circumstances under which the deceased came to his death. After taking evidence and listening to the testimony of sundry witnesses, all of whom apparently again testified at the trial of this case in the court below, the coroner's jury returned a verdict of accidental death.

Appellant was charged in the information filed against him with making certain false statements as a witness during the proceedings before the coroner, these statements being: That he was not at the home of Jack Novokovich when the said Hobart Haynes was shot; that he left said home before the shooting occurred and that he did not

know about such shooting until he arrived at work the next morning and heard the miners talking about it.

It seems to be conceded, so far as the effect of the record before us is concerned, that appellant was in another room, but not an adjoining one, at the home of Novokovich where the shooting occurred, and was asleep at the time the gun fired; that Haynes and two women one of whom had the pistol in her hand when it exploded and caused the fatal wound, were the only persons in the room of the house where the occurrence took place; that as soon as Haynes was hurt, one of these women went to the room where appellant was, told him what had happened and directed him to go for a doctor; that appellant then left the house, passing through the room where the shooting occurred and at that time Haynes was sitting in a chair, his shoulders being supported by the woman whose hand had held the weapon which caused the injury.

Our examination of the record shows that the coroner, testifying from memory only at the trial of this case which was held May 25, 1927, related that appellant as a witness at the inquest said he was not in the Novokovich house at the time Haynes was shot, and that his first knowledge of the shooting was from the men at the mine in the morning after he went to work at 7:30. The only other witness at the trial concerning appellant's statements at the inquest was the clerk of that proceeding, who testified that he made notes in longhand of the testimony given on that occasion, but did not undertake to record all of it—just ''took the main facts of the case,'' and ''did not take all the answers'' of the witnesses. He stated that appellant, when asked whether or not he was at the house when the shooting took place said, that he left before the shooting and also that appellant, in response to the question, ''You know he was shot?'' replied: ''I found out by the men this morning at the mine that he was *dead*.'' The significant word in this answer we have italicized. Appellant is of foreign birth, speaks only broken English, and has had no schooling.

Upon the conclusion of the evidence adduced in the case, the trial court, among other instructions, gave one numbered 10, which reads:

"The Court instructs the jury that the question of the materiality of the evidence is solely a question for the court, and the evidence having been introduced under the direction of the court, is all that is material in this trial;

"The Court has instructed you as to the materiality of the evidence in instruction #3, and has instructed you as to the duties of the coroner in instruction #6, and you are further instructed in instruction #9 that you are to consider all of the instructions together, and the directions given in these instructions cover all of the material points that the jury are to consider."

Instruction No. 6 of the charge was couched in the following language:

"The jury are instructed that when holding an inquest over the dead body of any person, the coroner is authorized to summon or subpoena witnesses, and to administer an oath to them requiring that the testimony which they may give to the inquiries concerning the death of the person, shall be the truth, the whole truth, and nothing but the truth, and if you believe from the evidence, beyond a reasonable doubt that the defendant took such an oath, and that thereafter he knowingly and wilfully testified falsely, to any matter material to the said inquest and investigation, then your verdict should be guilty."

Evidently after the jury had been instructed, they appear to have propounded some question to the court, the purport of which is not set out in the record, and in response thereto the court gave an additional instruction numbered 11 in this form:

"In answer to the question of the court by the jury you are instructed as follows:

"False swearing is not always perjury if the testimony is with reference to an immaterial matter:

"But if you find from the evidence beyond a reasonable doubt that the defendant has sworn falsely as to any matter which the Court has told you is material then your verdict should be guilty."

Counsel for the State, in a very proper desire to have this cause fairly determined upon its merits, have not raised sundry questions of procedure which if urged might have made it impossible for us to consider the matters to which we shall presently refer. Both sides have presented and submitted their views by brief and by oral argument concerning the sufficiency of the instructions hereinabove quoted, and we shall, accordingly, examine them. Pfieffer v. United States, 31 App. Cas. (D. C.) 109; 17 C. J. 213.

For the appellant it is urged that instruction No. 10, supra, is misleading and tended to confuse the jury concerning the issues they were to decide. We think that this is true. The meaning of the first paragraph of the instruction thus criticized is not at all clear in view of the nature of the evidence in the record and the offense with which appellant stood charged. Its second paragraph is utterly incorrect from several viewpoints. First, instruction No. 3 to which it refers contains not a word about the materiality of the evidence in the case, that matter being dealt with by another instruction entirely. Instruction No. 6, also referred to in the instruction under examination, is quite erroneous in that the jury were told that if they found that appellant knowingly testified falsely "to any matter material to the inquest and investigation" they should find him "guilty", thus ignoring entirely the limits of the charge made against him in the information on file. Further, instruction No. 10 is open to serious objection in that it is so inaptly worded that the jury might very well have concluded that the instructions numbered 3, 6 and 9 mentioned in its last paragraph, were the only instructions of real significance given by the court for their consideration.

It is also insisted that the court committed error in giving instruction No. 11, supra, by which the jury were told

in substance to find the defendant guilty if they found from the evidence beyond a reasonable doubt that the appellant had "sworn falsely as to any matter which the court has told you is material." We have already indicated the confused state in which the court's charge regarding the materiality of the evidence given at the inquest was left by the use of instruction No. 10, and, as we see it, the jury had only a very confused statement of the law on the point to guide them. Again, the instruction is quite deficient in failing to state that the jury must find beyond a reasonable doubt that the appellant swore "willfully, corruptly," as the statute requires in order to constitute the offense charged. See Cothran v. State, 39 Miss. 541; Goodwin v. State, 118 Ga. 770, 45 S. E. 620; Indianapolis etc. Co. v. Henby, 178 Ind. 239, 97 N. E. 313.

It is argued for the State that this element of the offense was sufficiently covered by other instructions previously given. But in this connection it will be recalled that the jury had already been instructed by the court upon the law of the case, and then in response to their question, whatever it may have been, this additional final instruction was given. Under the circumstances under which it was given to the jury for their consideration, the utmost care should have been exercised to make it a clear and accurate statement of the law. Further, there should have been attached to this instruction an express direction by the court that it should be considered only in connection with all the rest of the charge given.

In 38 Cyc. 1852, the text, after pointing out the danger of rereading to the jury an isolated part of the charge in a civil case, declares that:

"In any event, the judge should caution them that all of the law of the case is not given in that one, but that it only covers that particular phase of the case."

In Willmott v. The Corrigan etc Co., 106 Mo. 535, 17 S. W. 490, where an erroneous additional instruction had been given to the jury by the trial court, it was said:

"This instruction, and the other thirty-three having been left with the jury, it was their duty to consider them together. Did they do this? We are unable to answer the question. Courts have the undoubted right, and it often becomes their duty, to give juries additional instructions after having retired for consultation; but, when this is done, care should be taken to clearly define the scope and object of such additional instructions, so that the triers will be aided and not confused in the performance of their duty."

See also St. Louis etc. Co. v. Reed, 88 Ark. 458, 115 S. W. 150; Swaggerty v. Caton, 1 Heisk. (Tenn.) 199.

The same cautionary rule is applicable to criminal causes. In 16 C. J. 1088, the text discussing the requisites and sufficiency of additional instructions contains this language:

"But the court should admonish the jury that the additional instruction must be regarded with all the other instructions given."

Pless v. State, 102 Ark. 506; 145 S. W. 221, is to the same effect. It was there contended that the court committed error in giving an additional erroneous instruction, and in not at the time calling attention to the other instructions as part of the law of the case. In reversing the judgment below, the appellate court remarked upon this point:

"It was within the province of the presiding judge to recall the jury and give them further instructions when, in the exercise of a proper discretion, he regarded it necessary to do so in the furtherance of justice, and it is not always necessary in such cases that he should repeat the whole charge, but this instruction was given to the jury after they had returned once and asked to be instructed again as to the extent of drunkenness that would affect the degree of the crime and all the instructions of the case had been reread to them, and without any request upon their part

for further instruction, and also without any caution or admonition from the judge that they should regard it with all the other instructions given as the law of the case. Such practice is not to be commended, although in this instance it may be that the cause would not have been reversed because of it if the instruction complained of had been a correct declaration of law. Lee v. State, 73 Ark. 148, 83 S. W. 916.''

For the errors we have pointed out, which we think were prejudicial to the rights of appellant upon his trial, the judgment must be set aside. In view of the unfamiliarity with the English language on the part of appellant and the conflicting character of some of the testimony for the State concerning vital matters in the case, any re-presentation of the cause in a new trial should be conducted with special endeavor to see that the jury have clearly before them the particular issues they are to determine.

The judgment of the District Court of Fremont County is accordingly reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

BLUME, C. J., and KIMBALL, J., concur.