In the Matter of the Parental Rights to CH, a minor.

TG, Appellant (Respondent),

v.

DEPARTMENT OF PUBLIC ASSIST-ANCE AND SOCIAL SERVICES, SHERIDAN, Wyoming, Appellee (Petitioner).

No. C–89–4.

Supreme Court of Wyoming.

Nov. 27, 1989.

Clay B. Jenkins of Badley & Rasmussen, P.C., Sheridan, for appellant.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., and Richard E. Dixon, Asst. Atty. Gen., for appellee.

Thomas C. Wilson, Sheridan, guardian ad litem.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

This case is added to the rapidly increasing storehouse of Wyoming family tragedy case law. We address a jury verdict termination of the mother's parental rights for CH, her fourteen-year-old daughter, who was one of four children in the family.

This court joins counsel, trial court and the jury in overwhelming concern about the present welfare and future well-being of this teenage person. Appellant's counsel, in behalf of ethical, moral and legal responsibilities, thoughtfully and comprehensively challenges certain jury instructions. The State, in response, rejects contended error in instruction text and alternatively argues harmless error. We affirm the termination decision.

No manifest issue is presented which challenges sufficiency of the evidence for the jury verdict. Consequently, minimal discussion of the events of observed tragedy to all participants will be related.

Contact and involvement of the Sheridan County Department of Public Assistance and Social Services (D–PASS) commenced in January 1987 involving child abuse of not only CH, the subject of this appeal, but also the other children in the family which consisted of an older (apparently retarded) sister and older twin boys. After initial involvement, attempted placement, rehabilitative efforts, and counseling were pursued without success until December 21, 1988 when this proceeding was instituted upon the recommendation of the medical authorities and decision of the D–PASS personnel. The administrative determination was made for a basis of termination that family rehabilitation had failed. The twin brothers were in agency custody in a foster home arrangement and the older sister was with her natural father in Texas.

Appellate issues were created when, during trial, the deliberating jury sent a message to the trial court questioning:

(1) Judge, May we have a more specific definition of the term "family" in point number three that we are being asked to determine. Does family refer to [mother] herself, [mother] and [CH], or the family as a whole?

(2) When parental rights are terminated, are the child's rights also terminated? Could [CH] contact her mother if she chose to do so? What is the age [CH] must attain before these decisions are hers alone to make?

The trial court answered the questions by Instruction No. 12, "[i]n answer to your first question, the term 'Family' as it relates to question number 3 refers to [mother] only," and Instruction No. 13, "[t]he answer to your question number 2 [is] not pertinent to your decision in this case. Answer questions number 1, 2 and 3 on the Verdict Form based upon the instructions given you and the evidence presented at trial." Neither of the subjects addressed by the jury have previously been considered by this court.

We are unable to tell whether the trial court's answer to the first question as provided in Instruction No. 12 was intended to provide to the jury a statement of law or adaptation of the trial evidence facts. At trial, the older sister was in Texas, the absent stepfather was in South Dakota, the twins were in foster care in another Wyo-

ming county, and only the mother remained in Sheridan County. Consequently, it could be concluded the mother and CH, the daughter, were then the entire family for involvement in the Sheridan County termination proceeding. This constitutional analysis is not beyond argument in terms of the modern diffused state of many families.

If the answer was intended to determine the law, it was in error. We do not confine the explicit statutory language to apply only to the mother if the family does include other members in addition to one child and one parent, within the terminology of W.S. 14-2-309(a)(iii), which states as a ground for termination:

> The child has been abused or neglected by the parent, and efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating *the family* or *the family* has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent.

(Emphasis added.)

We could also agree with appellant that the current and explicit statutory changes also provide legislatively adopted answers to the second jury inquiry question.

Appellant argues:

A new statute has been added to the termination act explicitly stating the effects of a termination order.

> An order terminating the parent-child relationship divests the parent *and the child* of all legal rights, privileges, duties of support obligations with respect to each other except the right of the child to inherit from the parent shall not be effected by the order. Wyoming Statute § 14-2-317, emphasis supplied.

Clearly, the legislature intended a change in the termination act. Two law review articles bracket these changes and note the Legislature's tightening of the standard for termination. See *Termination of Parental Rights: Establishing Standards for the Wyoming Law*, Sid Moller, XVI Land and Water Review, No. 1, 1981, p. 295; and *Family Law—Wyoming's New Termination of Parental Rights Statute*, Becky Klempt, XVII Land and Water Review, No. 2 1981, p. 621. The changes relevant to the court's answers to the jury's questions are:

| OLD ACT | NEW ACT |
|---|---|

## ELEMENTS OF PROOF

| OLD ACT | NEW ACT |
|---|---|
| 1. Parent abuses or neglects; and | 1. Child abused or neglected by parent; *and* |
| 2. Termination in child's best interest. | 2. Failed efforts to rehabilitate *"the family"* or refusal of rehabilitation by *"the family;"* and |
| | 3. Child's health and safety seriously jeopardized by return to the parent. |

## EFFECT OF ORDER

| OLD ACT | NEW ACT |
|---|---|
| Order terminates the right of the parents to the child. W.S. 1978 Cumm.Supp. § 14-2-301(a), 306(a), 307(a) | All rights, both of parent *and child* are terminated except for the child's right of inheritance. |

(Emphasis in original.)

Having recognized the technical accuracy of appellant's argument,[1] we then analyze

---

[1] The more fundamental question implicit in the jury inquiry involves rights of the child upon adulthood to restore relationships with the terminated parent which requires information from confidential files as well as, in a case such as this, maintenance of contact, even if adopted, with brothers and sisters and perhaps grandparents following the termination. These issues

whether reversal in this well-founded jury verdict would also be either justified or required where sufficiency of the evidence is not presented as an issue for appeal. *Matter of TR*, 777 P.2d 1106 (Wyo.1989). *Cf. In Interest of J.G.*, 742 P.2d 770 (Wyo. 1987).

■ The relevance of an answer to the second jury inquiry will not be resolved here. The proper place to determine requirement and propriety of the instruction would have been at the pre-submission jury instruction conference. We hold that in the absence of a request at that time, appellant was not entitled to require supplementation during jury deliberation. Finding no absence of exercised discretion on a question clearly not central to the jury's decision of the welfare of CH, we find no reversible trial error. *Britton v. State*, 643 P.2d 935 (Wyo.1982). The problems we perceive with the first supplementing instruction was either the trial court made a jury question finding of fact as to what encompassed the "family," or made a legal decision in error to only include the mother in the statutory term.

In analysis of reversible error argument involving jury instructions, it is necessary to relate the questioned decision to the trial sequence. Generally, final consideration is given to instructions at the trial time conference just prior to the trial court's reading of those instructions to the jury and counsel's final argument.[2] The office of jury instructions in the trial and the procedure for adaptation and presentation is well-settled in Wyoming case law.

■ When the evidence to a fact is positive and not disputed or questioned, it ought to be taken as an established fact and the charge of the court should proceed upon this basis. *Kahn v. Traders Ins. Co.*, 4 Wyo. 419, 455 (1893). If an instruction is requested and cannot properly be given without modification, the judge may for that reason refuse to give it because to entitle it to be given, it must be wholly correct in point of law. Mere non-direction, partial or total, is not grounds for a new trial unless specific instructions, good in point of law and appropriate to the evidence, are requested and refused. *Hay, Executor, Etc. v. Peterson*, 6 Wyo. 419, 440, 45 P. 1073 (1896). "Both parties [are] entitled to proper instructions covering their respective theories regarding the evidence submitted, and, it [is], of course, for the jury then to determine the issue." *Barber v. Sheridan Trust & Savings Bank*, 53 Wyo. 65, 88, 78 P.2d 1101 (1938).

In synthesis of additional principles relating to review of claimed error in jury instructions, this court said:

now raging among family care experts and social scientists as well as adoption agencies permit no easy answer. The array of circumstances presented surely denies any dogmatic concept by court created boundaries.

2. W.R.C.P. 51, of which the second paragraph is similar to but not identical with F.R.C.P. 51, states:

At any time before or during the taking of evidence, the court may give to the jury such general instructions as to the duties and functions of the court and jury, and the manner of conducting the trial, as it may deem desirable to assist the jury in performing its functions. Such instructions, exclusive of rulings which are recorded by the court reporter for inclusion in any record, shall be reduced to writing, numbered and delivered to the jury with the other instructions and shall be a part of the record in the case.

At the close of the evidence, or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. A direction by the court that requests be filed prior to the close of the evidence shall not preclude any party from filing any subsequent request necessitated by the evidence and not reasonably anticipated by the party prior to the time of filing. Before the argument of the case to the jury is begun, the court shall give to the jury such instructions on the law as may be necessary and same shall be in writing, numbered and signed by the judge, and shall be taken by the jury when it retires. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make any such objection out of the hearing of the jury. All instructions offered by the parties, or given by the court, shall be filed with the clerk and, with the endorsements thereon indicating the action of the court, shall be a part of the record of the cause.

It is insufficient for the litigant in objection to merely state that the instruction is not complete or an accurate statement of the law. *Runnion v. Kitts*, 531 P.2d 1307 (Wyo.1975). * * *

> Error may not be assigned unless objection has been made thereto with a distinct statement of the matter to which objection is made and the grounds for this objection, and indicating with definiteness and particularity the error asserted, * * *.

*Texas Gulf Sulphur Co. v. Robles*, 511 P.2d 963, 968 (Wyo.1973).

> "In reviewing alleged errors in jury instructions, a finding of error is not alone sufficient to reverse; prejudicial error must be found. *Walton v. Texasgulf, Inc.*, Wyo., 634 P.2d 908 (1981). Prejudicial error is never presumed; it must be established by the parties. * * *."

*Goggins v. Harwood*, 704 P.2d 1282, 1292 (Wyo.1985) (quoting from *Cervelli v. Graves*, 661 P.2d 1032, 1036 (Wyo.1983)).

> In order to hold an improper instruction reversible, the record must show that substantial rights were affected. Rule 7.04, W.R.A.P. For an error to be harmful, there must be a reasonable possibility that, in the absence of error, the verdict might have been more favorable to a party, and the burden is on the appellant to show where the error is prejudicial. *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981). Merely showing an error occurred does not create a presumption of prejudice as injury to an appellant. *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984).

*Condict [v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.]*, 743 P.2d [880] at 885 [ (Wyo.1987) ].

*Hashimoto v. Marathon Pipe Line Co.*, 767 P.2d 158, 162 (Wyo.1989).

Inevitably, the consideration of the function of the jury instruction, whether couched in terms of plain error, harmless error or lack of prejudice, was "to give the jury guidance in reference to the law of the case to assist it in arriving at correct conclusions." *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 32 (Wyo.1983). Within the axiom that litigation must end some day from which the concept of harmless error is extrapolated, the second criteria of instruction review is that "prejudice will not be said to result unless it is demonstrated that the instruction confused or misled the jury with respect to the proper principles of law." *DeJulio v. Foster*, 715 P.2d 182, 186 (Wyo.1986). *See also Cervelli v. Graves*, 661 P.2d 1032 (Wyo.1983).

■ Consequently, in synthesis there is (a) waiver if objection is not taken or request is not made, *Alberts v. State*, 642 P.2d 447 (Wyo.1982); *Texas Gulf Sulphur Co. v. Robles*, 511 P.2d 963 (Wyo.1973); (b) proper rejection if the instruction is substantively improper, *Clarke v. Vandermeer*, 740 P.2d 921 (Wyo.1987); *Schwager v. State*, 589 P.2d 1303 (Wyo.1979); and then (c) if no waiver and rejection was improper, final question whether prejudice exists in the text of the instruction in misleading or misinforming the jury for its decision in that case, *MacManus v. Getter Trucking Co.*, 384 P.2d 974 (Wyo.1963).[3]

A clear differentiation must be discerned between the initial jury instruction conference culminating in the body of law initially given to the jury for decision and later inquiries made during the jury deliberation. This rationale in difference is a subject which apparently has not previously been directly addressed by this court. Compare *Johnston v. State*, 747 P.2d 1132 (Wyo. 1987), where no objections were made to the supplemental instructions given by the trial court in response to the jury questions asked during deliberation.

■ Absent the most unusual circumstances, trial court denial of further sub-

---

**3.** Superimposed on the concepts of error in instructions is the plain error rule, *see Goggins v. Harwood*, 704 P.2d 1282 (Wyo.1985). Plain error cannot appropriately be applied under the circumstances involved in this termination case to any waiver question at instruction conference and did not occur during mid-trial since specific objection was taken by appellant. *Cf. Johnston v. State*, 747 P.2d 1132 (Wyo.1987).

stantive instruction during the deliberative process will not constitute reversible error where either litigant objects to the text of any proposed specific additional statement. *Britton*, 643 P.2d 935. Conversely, if no objection is made, arguable error is waived. *Scheikofsky v. State*, 636 P.2d 1107 (Wyo. 1981). *Cf. Hoskins v. State*, 552 P.2d 342, *reh'g denied* 553 P.2d 1390 (Wyo.1976), *cert. denied* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977) and Note, *Absence of Counsel During Reinstruction of the Jury in a Criminal Proceeding. Hoskins v. State*, 552 P.2d 342 (Wyo.1976), XII Land & Water L.Rev. 319 (1977). On the related subject of re-reading any portion of the transcript, discretion existed. *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195, 1200 (Wyo.1987).

■  The substantive instruction given on the issues of appeal includes:

INSTRUCTION NO. 3

The State must prove by clear and convincing evidence each of the following elements:

1. That the child has been neglected by [mother] and

2. That the health and safety of the child would be seriously jeopardized by remaining with [mother], and

3. That efforts by an authorized agency

a. Have been unsuccessful in rehabilitating the family, or

b. The family has refused rehabilitative treatment.

If you find that the State has failed to prove any one of the above elements by clear and convincing evidence, the parental rights of [mother] will not be terminated. On the other hand, if you find that the State has proved all of the above elements by clear and convincing evidence, then the parental rights of [mother] will be terminated.

INSTRUCTION NO. 6

"Termination of parental rights" means that all legal rights, privileges, duties, and support obligations are forev-

er ended. If you find that the parental rights of [mother] should be terminated, it means that she will no longer have any legal rights to her child, [CH].

No objection was taken to these instructions and no other instructions on the same subject were offered by appellant and either accepted or refused by the trial court before jury deliberations started. The issues requiring resolution by the jury were adequately addressed and when given without objection, became the law of the case. *Saldana v. State*, 685 P.2d 20 (Wyo.1984), *cert. denied* 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985).

■  We recognize a jury could develop a logical interest in the definition of terms and the meaning of its decision and particularly so in a case so highly charged with emotion as termination of parental rights. The fact that the jury has an interest does not mean the trial court is required to reopen the instructing process to answer the questions submitted to it. Factors of undue influence and confusion may obviously be presented. *State v. Skinovich*, 40 Wyo. 174, 276 P. 172 (1929). *See Chambers v. State*, 726 P.2d 1269 (Wyo.1986). Unless singular error existed in the initial instructions, the trial court's denial of further instruction is discretionary. Additionally, we find the definition of a family as emplaced in the trial process to be harmless and without prejudice to a proper and just decision by a jury in the case considering the comprehensive and persuasive evidence presented relating to the issue to be resolved by the jury. A basis for reversal of the obviously factually justified jury decision is not now presented.[4]

Affirmed. No costs awarded.

---

4. Family rehabilitation efforts and familial cohesion fell apart in May 1988 when appellant suddenly left Sheridan at about the time CH was to return to her custody and did not return to the jurisdiction until November. In departing for Texas, appellant told CH she would again

see her "some time in 1990 or whenever." Practical efforts for reconciliation between CH and appellant were thus permanently eroded even when appellant did return to Sheridan about six months later.