SHUE *v.* STATE.

Opinion delivered June 11, 1928.

606

*Elmo CarlLee,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

Wood, J. Charlie Shue was convicted on a valid indictment charging him, in the first count, with the crime of grand larceny, and in the second count with the crime of receiving stolen property knowing same to be stolen. He was tried on both counts, and was found guilty on the count of receiving stolen property, and, by judgment of the court, was sentenced to imprisonment in the State Penitentiary for a period of two years, from which judgment he prosecutes this appeal.

1. The appellant contends that the testimony was not sufficient to sustain the verdict. The testimony of Jack Troy and Clarence Bayliss was to the effect that they were employed by the appellant; that they delivered five hogs to the appellant, among which was the hog belonging to W. F. Wiggins mentioned in the indictment. According to their testimony, they were employed by the appellant to catch the hogs, and he was to give them $10 for each hog delivered to him at a certain place designated by the appellant, in Woodruff County, on the hard-surfaced road between appellant's place of business and Memphis, Tennessee. They delivered the hogs to the appellant about twelve or one o'clock at night, in Woodruff County, Arkansas. The appellant put them in a truck, and went with them toward Memphis. These wit-

nesses stated that the appellant told them where to catch the hogs and where to deliver them. The witnesses used the appellant's wagon to convey the hogs to the place designated by the appellant, where they were to deliver the same to him. It was shown that one of the five hogs was the property of W. F. Wiggins. He found the hog in the stock pens at Memphis, Tennessee.

Wiggins testified that, in a conversation with the appellant, appellant stated that the hogs were delivered to him on the pike road, and that it was dark, and appellant could not see the marks; that he drove on until daylight, when he looked and discovered that one of the hogs was in witness' mark. Witness lost the hog in Woodruff County, Arkansas.

The testimony of the appellant, in substance, was to the effect that he bought the hogs from Jack Troy and Clarence Bayliss. The transaction took place in appellant's store. He told Troy and Bayliss that he would have to get a wagon, or that they would have to get one, and bring the hogs to him. He hired them a wagon and team, and they agreed to bring the hogs to the pike road. They met the appellant at the pike road about two o'clock in the morning. They had five hogs. Appellant put the five hogs in his truck, and took them to Memphis and sold them. After appellant got back from Memphis, Bayliss and Troy came to get their money, but appellant refused to pay them, because he had heard, in the meantime, that the hogs were stolen, and appellant told them that he could not pay until he found out whether or not they had been stolen. Appellant's business was farming, raising live stock, and trading. He had a little store. It was appellant's custom to haul hogs to Memphis at night. Everybody hauled hogs at night, so they would not get too hot.

There was other testimony, but it is unnecessary to set it out. It will be seen from what we have already set forth that the testimony was sufficient to sustain the verdict. To be sure, there was a sharp conflict in some respects between the testimony of the appellant and Jack

Troy and Clarence Bayliss. But the jury were the sole judges of the evidence and the credibility of the witnesses. While Bayliss and Troy were accomplices, yet their testimony was sufficiently corroborated in essential particulars by the testimony of the appellant himself to justify the jury, where their testimony was in conflict with that of the appellant, to accept their testimony and reject his. It is unnecessary to comment further upon the testimony, as we are convinced that the testimony was sufficient to sustain the verdict.

2. The appellant assigns as error the giving of the following instruction: "You are instructed that the unexplained possession of property recently stolen is a fact from which an inference of guilt may be drawn, but the weight to be given the testimony on this question and the inference to be drawn therefrom are questions for the jury; and it is a matter for you to determine the reasonableness and sufficiency of the explanation given by the defendant as to his possession of the stolen property." We cannot concur in the view of learned counsel for the appellant that the instruction is an invasion of the province of the jury. The instruction is in harmony with the law on this subject as declared by this court in many cases, some of them quite recent. *Long* v. *State*, 140 Ark. 413, 216 S. W. 306; *Pearrow* v. *State*, 146 Ark. 182, 225 S. W. 311; *Gilcote* v. *State*, 155 Ark. 455, 244 S. W. 723; *McDonnell* v. *State*, 165 Ark. 411, 264 S. W. 961; *Yelvington* v. *State*, 169 Ark. 360, 275 S. W. 701; *Thomas* v. *State*, 175 Ark. 279, 298 S. W. 1027. In the last case we quoted approvingly the rule as laid down in R. C. L. as follows:

"The rule is, without doubt, that the possession of the property by the defendant, soon after the commission of the alleged crime, is merely an evidentiary fact tending to establish guilt, which should be submitted to the jury, to be considered in connection with all the other facts and circumstances disclosed by the evidence. It does not in any case raise a presumption of law that the defendant committed the alleged larceny, although the

unexplained exclusive possession of stolen goods shortly after the commission of a larceny may, and often will, be sufficient evidence to justify a jury in finding the possessor guilty." See also *Harrell* v. *State,* 169 Ark. 1038, 278 S. W. 45.

3. The bill of exceptions recites: "The cause was submitted to the jury at 5 P. M. and was deliberated upon by the jury until 6:45 P. M., at which time the court recessed until 8 P. M., at which time the jury reconvened for further consideration of a verdict, and deliberated upon the same until 10:30 P. M., at which time the court had them called into the court room, and asked if they had a verdict, and they replied in the negative; thereupon the court gave the following additional instructions: 'Under the law, gentlemen, if you should find the defendant guilty of either one of the counts in the indictment, then you could not find him guilty of the other. You can find him guilty only on one count, for he could not be guilty of both stealing the property and receiving the same, under the evidence in the case. In case you should arrive at a verdict of guilty upon either one of the counts in the indictment, and are unable to agree on the amount of punishment to be inflicted, then you may return a verdict of just guilty on whichever count you may so find is justified under the evidence in the case, and the court can fix the punishment; but if, on the whole case, you entertain a reasonable doubt as to the guilt or innocence of the defendant, then he would be entitled to the benefit of that doubt, and you should acquit him.' "

The above instruction is the law, and it is proper for the court to so declare in cases of this kind. While larceny and knowingly receiving stolen property are kindred offenses, and may be charged in one indictment (§ 3016, C. & M. Digest), they are nevertheless not the same offense, and the conviction of one would necessarily preclude a conviction of the other. Only a general objection was made to the instruction. The instruction therefore should be considered as a whole, and not in separate paragraphs, as learned counsel for appellant urge. When

the concluding portion of the instruction is read in connection with the other portion, it is manifest that counsel are in error in assuming that the court intimated his opinion of the guilt of the defendant. On the contrary, the instruction leaves the guilt or innocence of the defendant to be determined by the jury on either of the two counts in the indictment. Even though the instruction was not embodied in the court's charge when the cause was sent to the jury for its deliberation and verdict, this was not error. The court had omitted from its charge an essential proposition of law, under the evidence, to guide the jury in its deliberation, and it was proper to give them such direction before the return of their verdict.

In view of the comment of counsel for the appellant upon the above conduct of the trial judge in recalling and instructing the jury as above set forth, it is well to repeat what we said in the recent case of *Aydelotte* v. *State, ante* p. 595, 281 S. W. 369, as follows: "The recalling of trial juries, after the case has been submitted to them for decision, for additional instructions by the trial court on its own motion, where such additional instructions are in effect but a repetition of instructions already given before the jury retired to consider of its verdict, is not a practice to be commended. Unless the trial judge, under such circumstances, proceeds with extreme caution, and is exceedingly careful in the language employed in thus instructing the jury, his conduct is likely to be interpreted by one or the other of the parties to the litigation as manifesting a bias, prejudice, or partiality in the cause, and as an effort on his part to argue the case and to unduly influence the jury in its deliberations. A trial judge should scrupulously avoid any act calculated to impress the parties to the cause with the idea that he is not holding the scales of justice in equipoise and weighing their respective rights with a fair and impartial hand. Necessarily the presiding genius of the trial is vested with large discretion to determine when the ends of justice require the recall of trial juries

on his own motion to repeat instructions, or to give additional instructions, and, unless there is a manifest abuse of such discretion, his ruling in this regard, when challenged, will not cause a reversal of the judgment."

In the case at bar the court, having omitted in its original charge to instruct the jury that they could not, under the evidence, find the defendant guilty on both counts of the indictment, it was the duty of the court to complete its charge by so instructing the jury before the verdict was returned.

The record presents no reversible error in the rulings of the trial court, and the judgment is therefore affirmed.