Joʜɴ T. Bᴜʀᴛoɴ

*v.*

Sᴛᴀᴛᴇ ᴏꜰ Tᴇɴɴᴇssᴇᴇ.

394 S.W.2d 873.

(*Nashville,* December Term, 1964.)

Opinion filed October 21, 1965

Wilkes Coffey, Jr., Murfreesboro, for appellant.

George F. McCanless, Attorney General, Robert F. Hedgepath, Assistant Attorney General, for appellee.

Mr. Justice Dyer delivered the opinion of the Court.

John T. Burton appeals from a conviction of murder in the second degree for which he received a sentence of not less than ten or more than twenty years in the state penitentiary. The facts are summarized as follows:

On 7 March 1962 defendant married Jean Clark Steelman, a divorcee with four daughters: Barbara, Beverly, Carolyn and Susan. They moved into a home at LaVergne in Rutherford County where on 16 November 1962 a son was born to them. This marriage was stormy from the beginning and on 7 March 1964 Jean Clark obtained a divorce and custody of their son. Jean Clark, with the children, continued to live in LaVergne while defendant moved to Nashville taking an apartment with a member of the Nashville Metropolitan Police Force.

Trouble soon developed between defendant and his former wife, Jean Clark Burton, over their infant son involving visitation rights and proper care of the infant. The infant was apparently poorly clothed every time the defendant visited him and upon taking the infant to a doctor defendant discovered he was suffering from malnutrition.

This struggle between defendant and Jean Clark reached a peak on 6 July 1964. On that day, during the afternoon, defendant went to the home of Jean Clark, who was at work at the time, taking their infant son to the home of some friends. Later in the afternoon defendant met a lady friend and the two drove to Franklin, Tennessee, for dinner. After dinner defendant went to his apartment and talked over his problems with this lady friend and some other people who were with them. These friends accompanied defendant to LaVergne when he returned his son to the home of Jean Clark about 11:00 P.M. Upon returning the child to LaVergne defendant, parting with his friends, went back to his apartment and obtained a 38 calibre pistol and 1960 Thunderbird automobile belonging to his roommate, and returned to the home of Jean Clark.

Upon reaching the home of Jean Clark, the defendant broke in the back door of the home and with his pistol in his hand, confronted Jean Clark and two of her teenage daughters, namely Barbara Steelman and Beverly Steelman. The defendant followed Jean Clark and Beverly Steelman inside a bedroom belonging to Beverly and Barbara Steelman. While inside the bedroom, the defendant held the three at gun point and announced that he was there to kill Jean Clark. At the time he followed Beverly Steelman into her bedroom, he had his gun pointed at her (Beverly). While inside the bedroom, Jean Clark told Barbara to knock out the window, whereupon the defendant replied, ''open that window and I'll shoot you everyone as you go.'' During the time the defendant held the three at gun point, he carried on a conversation with Jean Clark. This conversation related to his son, John Drew Burton. Prior to the shooting, she said ''I'll give you Johnnie'', and the defendant answered, ''No, it is too late now.''

The defendant, after announcing that he was going to fill Jean Clark full of lead, fired one shot and hit Jean Clark. He then fired other shots, one of which killed Beverly Steelman, who had begun to scream as a result of his shooting her mother, and another of which struck Jean Clark. Then the defendant walked over to Jean Clark, put his gun next to her head, and said ''Jean, are you dead yet?'' and she answered, ''No, John, but I am going.'' At this point, the defendant said ''I know I'm going to burn in the electric chair for this but I'm going to enjoy every minute of it knowing that you died slowly and in agony.'' After firing the shots and killing Beverly Steelman, and having shot Jean Clark twice, the defendant was asked by Barbara Steelman if she could call an

ambulance inasmuch as it was possible Beverly and her mother were only injured. The defendant looked at Beverly and said "No." The defendant asked Barbara as he started out from the bedroom, "do you want me to shoot you, too, Barbara, or do you want me to spare you?" The defendant pulled the telephone cord off the wall and then left the house.

The defendant was arrested in Nashville and made a statement admitting that he had shot his wife. This statement was made at eight o'clock on the morning of July 7, 1964. The shooting had taken place between 4:00 and 5:00 A.M. on the same morning.

The defendant testified that he remembers getting the gun from the apartment, in which he lived, but that the last thing he remembers is that he was driving the automobile, which belonged to his roommate, at a very high rate of speed. He then states that the next thing he remembers is that he was in a friend's house in Nashville. He does not remember any of the happenings from the time he left for LaVergne until he returned to Nashville.

The first assignment of error is that the evidence preponderates against the verdict of guilty and in favor of innocence. The defense was based on insanity at the time of the commission of the crime and it is argued the defense, under the evidence, having raised a reasonable doubt as to defendant's sanity the State failed to introduce any rebuttal evidence as to sanity. Defendant cites the following statement from *Dove v. State,* 50 Tenn. 348 (1871):

"If the evidence raises any questions as to the defendant's sanity it is incumbent upon the state to

establish his sanity beyond a reasonable doubt. All the defendant is required to do is to raise a reasonable doubt of his sanity at the time the act or acts were committed, and the defendant does not have to prove his insanity by a preponderance of the evidence or beyond a reasonable doubt."

The defendant testified he had no recollection of the events after he obtained the pistol until he was speeding back to Nashville after the crime. Mrs. Clyde R. Owensby, a clinical psychologist, examined defendant and testified he was in a disassociated state and his powers to decide between right and wrong were limited. Mrs. Owensby could not say whether or not defendant suffered from this disassociated state at the time of the crime. She testified defendant was not insane. The Sheriff of Rutherford County talked to defendant before noon on 7 July 1964. The Sheriff testified at the time of this conversation with defendant, "he was nervous * * * he spoke very coherently and I could understand very clearly everything that he said."

■■ The failure of defendant to remember is in itself no proof of his mental condition when the crime was committed. *Thomas v. State,* 201 Tenn. 645, 301 S.W.2d 358 (1957). The court charged the jury on the law regarding the responsibilities of the State with respect to establishing sanity beyond a reasonable doubt. The jury determined defendant did know the difference between right and wrong at the time he committed the crime and the trial judge approved this finding. This finding is supported by a preponderance of the evidence. The first assignment of error is overruled.

Some three hours after the jury had originally retired to consider their verdict the trial judge, on his own

68

motion, recalled the jury and the following proceedings were had:

THE COURT: Gentlemen, in order to make the charge a little more specific, I have added one sentence to the third paragraph in the charge. It is stated in the charge this: the question of importance is "was the mind of the assailant at the moment of the killing so far free from excitement and passion as to be capable of premeditating, as before explained, and was the death of the party slain the object sought to be accomplished by the slayer"?

MR. COFFEY: Your Honor, the defendant objects to the Court inserting, changing or adding to the original instructions given to the jury. The instructions given by the Court, whether it be the law or not, could result in prejudice in the minds of the jurors against the defendant. This is particularly true since the jury had deliberated for more than one hour on the original charge given by the Court, and for the Court to dramatically point out the need for additional charge that was prejudicial to the theory of the case as presented by the defendant, and to call the attention of the members of the * * * jury specifically and effectively to the contents of a change in the charge, which was in conflict with the theory of the case, at this particular point in the trial can result in prejudicially affecting their cool, calm and deliberate judgment by the members of the jury.

THE COURT: The Court overrules your objection.

MR. COFFEY: The defendant respectfully excepts to the Court's ruling.

THE COURT: Now this I have added, and it is the law.

*That where one is slain by a person attempting to commit murder in the first degree upon another person, it is not required that the assailant have malice against the person so slain, or that there was an intention to kill the person slain.*

THE COURT: Now, gentlemen, you may retire now.

The defendant admits this supplemental charge is a correct statement of law. The error alleged is the failure of the trial judge to admonish the jury not to place undue emphasis on this supplemental charge and to consider the language added in conjunction with the entire charge.

On this point neither the defendant nor the State cite a Tennessee case directly in point. In 23A C.J.S. Criminal Law sec. 1376 we find the following:

"* * * as a general rule it is regarded as within the province of the court to recall the jury and give them further instructions, when in the exercise of a proper discretion it regards it as necessary to do so in the furtherance of justice, and the court in its sound discretion may give additional instructions without request of the jury, as where it gives such instructions of its own motion after the jury have returned into court stating that they cannot agree, or where they have been out for a considerable time without reaching a verdict." 23A C.J.S.

The above statements from C.J.S. are to be read in conjunction with the following statement:

"The court should admonish the jury that the additional instruction must be regarded with all the other instructions given." 23A C.J.S. sec. 1376.

The statement above in C.J.S. that it is within the discretion of the trial judge, on his own motion, to recall the jury for supplemental instructions is supported by the following cases: *People v. Perry,* 65 Cal. 568, 4 P. 572 (1884); *State v. Moore,* 42 N.M. 135, 76 P.2d 19 (1938); *Hyde v. State,* 196 Ga. 475, 26 S.E.2d 744 (1943); *State v. McNabb,* 267 S.W. 606 (Missouri 1924); *Shue v. State,* 177 Ark. 605, 7 S.W.2d 315 (1928).

The statement in C.J.S. that the trial judge in giving supplemental instructions should admonish the jury to consider same in conjunction with the full charge is supported by the following cases: *State v. Shinowick,* 40 Wyo. 174, 276 P. 172 (1929); *Pless v. State,* 102 Ark. 506, 145 S.W. 221 (1912).

In the case *sub judice* the State had shown malice by defendant against his former wife, Jean Clark, but no malice against the deceased, Beverly Steelman. In reading the entire charge it is apparent this supplemental charge was needed in order for the jury to have a clear understanding of a point of law very material under the facts of this case. The supplemental instructions were not a repetition of instructions already given. Rather than abusing his discretion in recalling the jury, on his own motion, the trial judge was eminently correct in so doing.

This still leaves the question of whether, having properly recalled the jury for supplemental instructions, the trial judge should have admonished them not to place undue emphasis on the supplemental charge and to consider it in conjunction with the entire charge. To do so is far the better practice and the failure to do so could be reversible error. The decision, of whether such is reversible error, is made by examining the entire record

to determine if such action might reasonably be expected to prejudice a defendant.

█ In the case *sub judice* the defense was insanity at the time of the commission of the crime. This supplemental charge would have no effect whatever on this defense. Although defendant states he does not remember his acts resulting in the death of deceased, nevertheless, the record is so clear no reasonable mind could find other than he did in fact accomplish these acts. We think, under this record, it affirmatively appears defendant was not prejudiced in the failure of the trial judge to admonish the jury in regard to the supplemental charge.

We have considered the other assignments of error and find them without merit.

Judgment affirmed.