**STATE of Tennessee, Appellee,**

v.

**Merle CHANCE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 20, 1989.

Permission to Appeal Denied by Supreme Court Oct. 2, 1989.

Charles W. Burson, Atty. Gen. & Reporter, Debra K. Inglis, Asst. Atty. Gen., James W. Kirby, Asst. Dist. Atty. Gen., for appellee.

Cleveland C. Turner, Clarksville, for appellant.

## OPINION

BIRCH, Judge.

The defendant, Merle Chance, was convicted by a Stewart County jury of thirty-nine counts of fraud and false dealing.[1] The trial judge sentenced defendant to two years on each forgery and fraudulent breach of trust count, and three years on each embezzlement and false bookkeeping entry count. Chance was ordered to serve the first four months of the sentence in the

---

1.· Tenn.Code Ann. § 39–3–802 (1982), forgery, 22 counts; Tenn.Code Ann. § 39–3–1122 (1982), embezzlement, 8 counts; Tenn.Code Ann. § 39–3–949 (1982), false bookkeeping entries, 4 counts; and Tenn.Code Ann. § 39–3–907 (1982), fraudulent breach of trust, 5 counts (this information was compiled from the court's minutes).

local jail and the remaining portion on probation. Since all sentences are concurrent, the defendant has an effective sentence of three years, with probation to follow the initial four-month confinement.

Chance appeals, insisting first that the evidence is insufficient to support the verdict. In other issues, he asserts that

1) Certain testimony and other evidence was wrongly admitted in three specific instances;

2) Three of the supplemental instructions to the jury were erroneous;

3) The final argument on behalf of the state was improperly prejudicial; and

4) The trial court's approval of jurors taking notes during trial and carrying them into deliberations was reversible error.

We have thoroughly examined the record and carefully considered each of the defendant's contentions. The judgments are affirmed.

## I

■ Merle Chance was for many years the principal of the Stewart County High School in Dover. He was responsible, of course, for the overall operation of the school. One of his specific jobs was to act as the school's treasurer, a role which required him to receive, safekeep, deposit, and disburse monies generated by the many and varied school activities. Chance handled the bookkeeping himself, and he invariably denied the teachers access to these financial records.

State auditors examined the school's financial condition. They inspected the financial records for the years 1984, 1985, 1986, and 1987, including journals, ledgers, cancelled checks, deposit slips, invoices, and bank statements. By their calculation, approximately $28,000 that Chance had received was missing and could not be accounted for.

The audit resulted in multiple charges, which have produced the convictions under review.

First, there are 22 counts of forgery. The proof shows that the defendant affixed the signature of almost every teacher in the school to ticket reconciliation forms. These forms were used to account for the monies generated by sales of tickets to athletic events in which the school's teams participated. Chance admitted having signed the names of the teachers without their knowledge or consent.

Second, there are five fraudulent breach of trust counts. These offenses involve Chance's use of school funds to purchase tires and insurance for his personal vehicles.

Third, Chance was convicted of eight counts of embezzlement. The state proved that Chance received funds on seven specific occasions. These funds, all generated by student activities, totaled approximately $4,000. The monies were not deposited in the school's bank account. The eighth count involves Chance's embezzlement of a 1972 Dodge truck, which had been donated to the school.

Finally, in four counts, the evidence indicates that Chance made false record entries.

Chance maintained his innocence. He blamed his inept bookkeeping practices for his plight. While we quickly agree that his bookkeeping methods defy all understanding, there is abundant evidence from which the jury could conclude, as indeed they did, that Chance's bookkeeping was sloppy by design. Obviously, by "book-cooking" and account juggling, Chance muddled the financial status of the school's accounts, thereby concealing, at least for a long period, the true state of affairs.

We surmise from our review of the record that the presentation of the evidence in the trial court was tedious and mechanical. The jury was, nevertheless, able to thread its way through the evidentiary maze. In spite of testimony of his good character and reputation, the jury concluded, as they had a right to do, that Chance's conduct was, indeed, criminal.

Considering the entire proof, few, if any, of the facts are disputed. The aggregate of the evidence marshaled by the state is staggering—its effect insurmountable.

The jury accredited the testimony of the state's witnesses and resolved all conflicts in the testimony in favor of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978). On appeal, the state is entitled to the strongest legitimate view of the evidence, together with all the reasonable and legitimate inferences which can be drawn from it. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

Unquestionably, the evidence in this case is overwhelming to show the defendant's guilt beyond a reasonable doubt. The evidence clearly measures up to the required tests of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and Rule 13(e), Tennessee Rules of Appellate Procedure.

## II

■ For his next issue, defendant contends that the trial court erred in admitting photocopies of school records into evidence.

The transcript indicates that the pertinent records were sent to an out-of-county firm for audit, apparently upon the request of the Stewart County Board of Education. Unfortunately, a number of these records were not returned because the auditors misplaced them. Fortunately, however, Allen Tarpley, a district attorney's investigator, photocopied the documents before sending them to the auditors. The trial court permitted these photocopies to be admitted into evidence on several counts despite the defendant's objection and demand for production of the original documents.

The defendant's objection to the introduction of these photocopies, as we understand it, is that the photocopies were not made in compliance with the Uniform Photographic Copies of Business and Public Records as Evidence Act.[2] Section 24–7–110(b)(1) of the act contains the following provisions:

> If any business, institution, member of a profession or calling, or any department or agency of government, in the regular course of business or activity has kept or recorded any memorandum, writing, en-

try, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of the same to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic, or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is required by law.

He specifically contends that the records were not kept in the regular course of business, as the act requires, nor were they photocopied "in the regular course of business."

Clearly, this statute has no application to the instant case, since the original documents have not been destroyed; but the photocopies are admissible nevertheless.

First, our cases have held that photocopies and copies produced by other similar processes are considered to be duplicate originals. As such, they can be admitted into evidence without explaining the reason for failure to produce the originals. *See Bolton v. State*, 617 S.W.2d 909, 914 (Tenn. Crim.App.1981), *p.t.a. denied* June 1, 1981; E. McCleary, *McCormick on Evidence* § 236 (3rd ed. 1984).

Moreover, the defendant had been, by his admission, not only the person who made the entries, but also the custodian of these records. He made no suggestion of fraud or deception in the copying process and, indeed, authenticated many of the documents through his testimony. Additionally, he admitted affixing the names of other teachers to many of the documents.

An application of Federal Rules of Evidence, Rule 1003, which defines a photocopy as a "duplicate," would produce the same result, as would our own proposed Rules of Evidence, Rules 1003 and 1004, which are more liberal yet.

■ The defendant next narrows the focus of his general admissibility of photocopies challenge to introduce a closely-re-

---

2. Tenn.Code Ann. §§ 24–7–110, 24–7–111 (1980).

lated issue—whether forgery can be proved by a photocopy. He urges that the ancient Tennessee case of *Reeves v. State* [3] supports his contention that a forgery conviction must be proved by the original writing.

Reeves was prosecuted for fraudulent breach of trust. In its opinion, the Court gratuitously allowed that were the charge forgery or perjury, the original would have to be produced. We feel no obligation to follow this dicta, especially since *Reeves* was decided long before the development of the technology to produce duplicate originals as we know them today.

We are of the opinion that the holding in the *Bolton* case, although involving grand larceny, applies with equal force to forgery prosecutions.

We find, therefore, that the photocopies were properly admitted into evidence on all counts; the defendant's contrary contentions are without merit.

### III

■ In another issue, the defendant contests the trial judge's ruling with regard to certain testimony of Ms Norma Jean Dortch.

She testified that purported signatures of certain teachers appeared to have been in the defendant's handwriting. The defendant says that Ms Dortch should not have been permitted to give such testimony.

The witness, Ms Norma Jean Dortch, had taught at the high school for 31 years, which included the defendant's tenure as principal. She said she was extremely familiar with Chance's signature and with the signatures of many of the other teachers.

The trial judge found that she was sufficiently familiar with Chance's signature to have an opinion, permitted the testimony, and admonished the jury that it was simply an opinion.

If a witness is familiar with the signature and handwriting of an individual by experience, the witness is competent to give opinion evidence as to the identity of

the maker of the exhibited handwriting. *State v. Chestnut,* 643 S.W.2d 343, 347 (Tenn.Crim.App.1982), *p.t.a. denied* October 4, 1982.

The trial judge has wide discretion in determining the admissibility of evidence. The trial judge's ruling in respect to Ms Dortch's testimony is within acceptable limits of discretion.

### IV

■ The defendant next challenges three supplemental instructions to the jury.

Regarding the first, after having deliberated for almost two hours, the jury returned to open court and asked the following question:

Does a printed name on a signature line constitute a signature by law?

The trial judge responded:

It matters not what form the alleged forgery took if the defendant intended to defraud another. The writing may be cursive, printing, or any other method or writing if it was intended to defraud another. Does that answer your question?

A juror answered, "Yes, sir."

The defendant finds fault with this supplemental instruction not because of its content, but because, as he states, the trial judge should have admonished the jury "not to place undo [sic] emphasis upon those instructions and to consider them in conjunction with the entire charge." Defendant asserts that failure to accomplish this is reversible error, citing the case of *Burton v. State,* 217 Tenn. 62, 70–1, 394 S.W.2d 873, 876–77 (1965).

We conclude from *Burton* that admonition of the jury along the lines suggested is far the better practice, but whether such failure amounts to reversible error must be determined from an examination of the entire record.

We do not reach that point in the case under review, for included in the trial judge's original charge is the following language:

---

**3.** 47 Tenn. 96, 7 Cold. (1896).

... [I]t is your duty to carefully consider all of them [instructions]. The order in which these instructions are given is no indication of their relative importance. You should not single out one or more of them to the exclusion of another or others but should consider each one in the light of and in harmony with the others.

In our opinion, the giving of the above instruction was sufficient to forestall the problem. *See Leach v. State*, 552 S.W.2d 407, 408 (Tenn.Crim.App.1977), *cert. denied* May 2, 1977.

 The trial judge responded the next day to additional questions asked by the jury. Those questions are not included in this record; however, the trial judge's responses appear of record:

Ladies and gentlemen of the jury, in answer to the questions which you have asked the Court:

To defraud means to practice fraud, to cheat or trick, to deprive a person of property or any interest, estate, or right, by fraud, deceit, or artifice. Entries into a ledger are not required to be made within a certain time. Funds received by public officials are required to be deposited in the bank within three days. The defendant is not charged with violation of the three-day-deposit law, but only with making false entries.

Any person who is charged with the collection, safekeeping, transfer, or disbursement of money or property belonging to Stewart County, and who receives in the course of his employment money or property belonging to or for the benefit of his employer, and who embezzles or fraudulently converts to his own use such money or property is guilty of embezzlement.

In the case of the two-court indictment, you may only find the defendant guilty, if at all, of one count of the indictment or the other, but not both.

\* \* \* \* \* \*

Ladies and gentlemen of the jury, in answer to the question that you have asked concerning the date of the offense, the Court charges you as follows:

The actual date of the commission of the offense may be different than that charged in the indictment so long as the proof establishes that the offense occurred prior to the finding and returning of the indictment which date was the the [sic] 18th day of November, 1986.

These are correct statements of the law regardless of the questions that produced them. Considered in light of the entire charge, the quoted supplemental instructions provide no basis for reversal.

## V

 The defendant next asserts that "[t]he State's Attorney General erred in his argument to the jury." This bare assertion is unaccompanied by argument or citation to authority; therefore, it is waived. *See* Tennessee Rules of Appellate Procedure, Rule 27(a)(7); Rule 10(b), Rules of the Tennessee Court of Criminal Appeals; *State v. Galloway*, 696 S.W.2d 364, 368 (Tenn.Crim. App.1985), *p.t.a. denied* August 12, 1985.

## VI

 Finally, we have examined the issue of juror note-taking. Although the defendant does not press this issue,[4] were we to address it, we would find that juror note-taking rests in the discretion of the trial judge. Certainly we are unable to conclude from the record that the trial judge abused his discretion in this regard. *See Watkins v. State*, 216 Tenn. 545, 554–63, 393 S.W.2d 141, 145–49 (1965); *Brown v. State*, 3 Tenn.Crim.App. 678, 683–84, 466 S.W.2d 527, 529 (1971), *cert. denied* April 5, 1971.

The judgment is affirmed.

WADE and REID, JJ., concur.

---

4. *See* Tennessee Rules of Appellate Procedure 27(a)(7); Rule 10(b), Rules of the Tennessee Court of Criminal Appeals; *Galloway*, 696 S.W.2d at 368.