IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

NOVEMBER 1995 SESSION

FILED

December 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9505-CR-00139 |
| | ) | |
| | ) | Knox County |
| v. | ) | |
| | ) | Honorable Ray Lee Jenkins, Judge |
| | ) | |
| HOWARD BROWN, ALIAS, | ) | (Aggravated Rape) |
| DUNKER, | ) | |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Susan E. Shipley
800 Gay Street
1610 Plaza Tower
Knoxville, TN 37929

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Hunt S. Brown
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

Honorable Randall E. Nichols
District Attorney General
        and
Charme P. Johnson
Greg Harrison
Assistant District Attorneys General
City County Building
Knoxville, TN 37902

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## O P I N I O N

The defendant, Howard Brown, alias, Dunker, appeals from his conviction in the Knox County Criminal Court for aggravated rape, a Class A felony. He was sentenced as a Range I, standard offender to twenty years to be served in the custody of the Department of Correction. In this appeal as of right, the defendant contends:

> (1) that this case should be remanded for the trial court to determine if the indictment charges an offense,
>
> (2) that the trial court erred in excluding admissible evidence of the victim's sexual relationship with an adolescent male that was offered to rebut medical testimony under Tenn. R. Evid. 412,
>
> (3) that the trial court erred in supplementing its instructions to the jury relative to the election of offenses after the jury had begun deliberations, and
>
> (4) that the trial court erred in allowing the jury to resume deliberations after declaring a mistrial,
>
> (5) that the trial court erred in refusing the defendant's request for individual polling of jurors.

We find no reversible error and affirm the conviction.

The facts in this case involve the defendant having sexual intercourse with his step-daughter, who was less than thirteen years old. The victim testified that she was eleven years old and in the sixth grade when the defendant began touching and kissing her. She stated that the first conduct occurred on a day that the defendant kept her home from school. She said that the defendant took her to her mother's room where he had her perform oral sex and he performed oral sex on her. Later that same day, she testified that the defendant again forced her to perform oral sex on him. On another day, she said that the defendant came to her bedroom, took off her clothes and placed his penis inside her. She said that he stopped when she complained that he was hurting her stomach. On a third occasion, the defendant took the victim to her mother's bedroom and began fondling her, ultimately having sexual intercourse with

2

her.  The victim reported that the incidents occurred early in the school year.  The victim testified that she reported the abuse on December 9, 1991, by telling her aunt who then told her mother.

Janie Shelton, the victim's aunt, testified that the victim told her on December 9, 1991, that the defendant had sexually abused her.  She said that she immediately told the victim's mother.  She said that the victim was hysterical when taken to the hospital.  On cross-examination, she said that the victim's mother guessed who had abused her daughter.

Nancy Moore, the victim's sixth grade teacher, testified that the victim missed two days of school in September, five days in October and one day in November.  She described the victim as an honest and capable student, but she said that she noticed a change in the victim's attitude after her October absences.

Robert Kelly Dickson, an emergency room pediatrician with the University of Tennessee Hospital, testified that he examined the victim on December 9, 1991.  He said that the victim could not tell him how many times the abuse had occurred.  He said that the victim told him that nothing had happened in the last month leading up to her report.  He noted one large healed tear of the victim's hymen that had occurred several weeks prior to the examination.  He stated that the victim's condition was consistent with forced vaginal penetration and consistent with the history given by the victim.

The defendant presented the testimony of one of the victim's friends, Elesha Gibson, who testified that the victim and she had skipped school together on one occasion.  She also said that the victim complained to her that the defendant was too strict.

3

The defendant testified that he was twenty years old when he met the victim's mother. He said that they married in October 1990 and began living in the Bakertown Apartments where he was a maintenance man. He said that he had disciplined the victim after catching her with an older boy in the fall of 1991. He denied that any abuse occurred. On cross-examination, he admitted that he and the victim had been alone in the apartment several times.

I

The defendant has filed a motion with this court asking that we remand the case to the trial court for the determination of the sufficiency of the indictment in light of this court's holding in State v. Roger Dale Hill, Sr., No. 01C01-9508-CC-00267, Wayne County (Tenn. Crim. App. June 20, 1996), dealing with the mens rea element of the offense not being specified in the allegations. However, our supreme court reversed this court in Hill and concluded that an allegation that the defendant unlawfully sexually penetrated the victim would suffice. State v. Roger Dale Hill, Sr., No. 01-S-01-9701-CC-00005, Wayne County (Tenn. Nov. 3, 1997) (for publication).

In any event, the indictment in the present case alleges that the defendant "unlawfully and feloniously did sexually penetrate" the victim. (Emphasis added). The Tennessee Supreme Court has previously held that the term "feloniously" means "with a deliberate intent to commit a wrongful act" and, thus, includes intentional acts. State v. Smith, 119 Tenn. 521, 526, 105 S.W. 68, 70 (1907). Under present law, the element of recklessness, that is required for aggravated rape, is also established if a person acts intentionally or knowingly. See T.C.A. § 39-11-301(a)(2). Thus, the term "feloniously" as alleged in the indictment actually specifies the mens rea necessary for aggravated rape. The indictment is sufficient.

4

## II

The defendant contends that the trial court erred by excluding admissible evidence of the victim's sexual relationship with an adolescent male that was offered by the defendant to rebut medical testimony under Rule 412, Tenn. R. Evid. The state argued that the defendant's motion failed to specify sufficiently the proof sought to be admitted and the reason for its admission. Following a hearing and the defendant's offer of proof, the trial court granted the state's motion to exclude the evidence based upon the insufficiency of the notice.

Rule 412 allows the admission in an aggravated rape trial of specific instances of conduct relative to the victim's sexual behavior with persons other than the defendant if offered to rebut or explain medical or scientific testimony. Tenn. R. Evid. 412(c)(4)(i). However, the defendant must submit a written motion no later than ten days before trial unless the evidence is newly discovered or relates to a newly arisen issue. Tenn. R. Evid. 412(d)(1)(i). The motion must be served on all parties and must be accompanied by a written offer of proof that describes the specific evidence and the purpose of its admission. Tenn. R. Evid. 412(d)(1)(ii) and (iii).

The record reflects that the defendant complied with the filing time limit. Also, it is apparent that the state had sufficient notice of the specific evidence sought to be admitted by its assertions that both the victim and her alleged partner were available to deny that they had had a sexual relationship in 1991. Therefore, we conclude that the trial court should not have excluded the evidence due to any insufficiency in the notice to the state. However, we do conclude that the evidence should have been excluded because it constituted inadmissible hearsay evidence as it was. The defendant's offer of proof consisted of the testimony of Elesha Gibson and Amanda Love, both of whom testified that the victim told them that she was having a sexual relationship with another adolescent in the apartment complex. Both witnesses

acknowledged that they had never witnessed any sexual activity between the victim and her alleged partner. One also stated that she did not know if there was any truth to the victim's statements and thought that the victim might have been trying to fit in with older kids. This evidence is hearsay when offered as truth to rebut the medical testimony. Therefore, the evidence was properly excluded.

III

The defendant contends that the trial court erred in supplementing its instructions to the jury after the jury had begun deliberations relative to the election of offenses. The record reflects that the state elected the specific instances upon which it would rely at the close of the state's proof but outside the presence of the jury. The trial court neglected to instruct the jury on the election of offenses and the requirement of jury unanimity in its initial instructions. The jury began deliberations late in the afternoon and when deliberations resumed the following day, the trial court, sua sponte, delivered the supplemental instructions relative to the election of offenses. Included in these instructions was the admonishment that the supplemental instructions not be given any greater weight than those previously given.

The trial court is required to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). In order to insure jury unanimity, when the facts of a case could implicate several offenses, the trial court is required to instruct the jury regarding the election of the specific offense upon which the state is relying for a conviction. State v. Shelton, 851 S.W.2d 134, 136-37 (Tenn. 1993). Also, it is within the trial court's discretion to recall a jury for supplemental instructions. Burton v. State, 217 Tenn. 62, 70, 394 S.W.2d 873, 876 (1965). In this case, the failure of the trial court to charge the jury relative to the election of offenses would have been error. Furthermore, the trial court correctly admonished the jury not to place any undue emphasis on the supplemental charge and

6

to consider it in conjunction with the entire charge. Therefore, we conclude that the trial court did not err in instructing the jury, <u>sua</u> <u>sponte</u>, after deliberations had begun.

## IV

The defendant contends that the trial court erred in allowing the jury to resume deliberations after declaring a mistrial. The defendant argues that the trial court placed undue pressure upon the jury to arrive at a verdict. The state responds that it was not error to continue deliberations when the jury indicated that progress was being made and that a verdict could be reached.

On the first day of deliberations, the jury began deliberating at 3:20 p.m. Deliberations resumed the next morning after the trial court issued additional instructions regarding the election of offenses and jury unanimity. At 11:17 a.m., the jury returned to the courtroom and the following exchange took place:

> THE COURT: All right. Members of the jury, who is your foreman? Yes, sir. Have you reached a verdict?
>
> THE FOREMAN: No, sir.
>
> THE COURT: All right. Let me ask you this. Do you feel that there is any possibility of reaching a verdict?
>
> THE FOREMAN: No, sir.
>
> THE COURT: Do you feel that you are deadlocked?
>
> THE FOREMAN: Yes, sir.
>
> THE COURT: All right. Is that the consensus of the jury? All right. It seems to be. All right --- all right. Enter a mistrial. These things happen. Don't let it bother you. We appreciate your service. You've been away from family ---
>
> JUROR NO.3: What does that mean when you have a mistrial?
>
> THE COURT: That means that no verdict is entered. Your verdict must be unanimous, as I instructed you.
>
> JUROR NO.9: We --- we just feel we need more time.
>
> THE COURT: Do you think you can reach a verdict?

7

JUROR NO.9: I think we can.

A JUROR: It's possible.

THE COURT: All right –- all right. Then -- if you can reach a verdict, that's what I need to know. You think you can ?

A JUROR: We're getting real close.

THE COURT: All right. Well, that's fine. If you're making progress, I don't have any problem with it; but if you're not, then I would enter a mistrial, and it would have to be tried before another jury. But, if you feel that you're making progress, then return to the room and continue your deliberations.

The jury deliberated for an additional thirty-five minutes before returning a guilty verdict for one count of aggravated rape.

"The right of trial by jury may not be impaired or encumbered with conditions which, in their practical operation, may embarrass or violate the free and full enjoyment of the right." Kersey v. State , 525 S.W.2d 139, 144 (Tenn. 1975) (citing Neely v. State, 63 Tenn. 174 (1874)). "An instruction that coerces a jury into returning a verdict is bad." State v. Weston, 506 S.W.2d 946, 948 (Tenn. Crim. App. 1973). However, instead of an instruction creating the coercion, in this case we are faced with the question of whether the trial court's declaration of a mistrial unduly coerced the jury into arriving at a verdict. We note that the trial court may, in its discretion, order a jury to deliberate further after it appears that the jury is unable to reach a verdict, Kersey, 525 S.W.2d at 145, and unless a trial court causes a jury to reach a verdict in such a manner that is "patently not their free and untrammeled verdict, a new trial will not be granted." Rushing v. State, 565 S.W.2d 893, 896 (Tenn. Crim. App. 1977).

In this case, the trial court asked the jury if it was deadlocked. Upon confirming the deadlock, the trial court declared a mistrial. The jurors themselves inquired into the meaning of a mistrial and indicated a willingness to work longer toward

8

arriving at a verdict. We cannot conclude that the awareness of the potential for a mistrial, in this case, unduly coerced the jury into arriving at their verdict.

**V**

The defendant contends that the trial court erred in refusing the defendant's request for the individual polling of jurors. After the foreman reported the verdict, the trial court asked each juror to raise his or her right hand to indicate that each was in agreement with the verdict. The defendant then requested that the jurors be polled individually to which request the trial court responded that they had been and discharged the jury. The defendant claims that an individual poll was necessary to insure jury unanimity and the absence of coercion. The state argues that a showing of hands is comparable to an individual poll.

A trial court may not refuse to poll a jury upon request from either the defendant or the state. T.C.A. § 20-9-508; Craig v. State, 506 S.W.2d 949, 950 (Tenn. Crim. App. 1973). The object of polling is to ascertain each individual juror's verdict in order to insure a certainty in the collective verdict. See Whitwell v. State, 520 S.W.2d 338, 342 (Tenn. 1975). In Geodel v. State, 567 S.W.2d 180, 184 (Tenn. Crim. App. 1978), this court indicated that the trial court should announce the verdict and then inquire individually into each juror's agreement, allowing for a yes or no response from each juror. This process should be followed by the trial court in the future upon request, because it provides the surest means of verifying the fact of both an individual and collective verdict by the jurors. However, although we doubt that an en masse hand-raising necessarily supplies equal certainty of a verdict, we are unable to conclude on the record before us that the polling as conducted masked a less than unanimous verdict.

9

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
Joseph M. Tipton, Judge

CONCUR:


_____
Gary R. Wade, Judge


_____
John K. Byers, Senior Judge