IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
DECEMBER SESSION, 1997

FILED

February 3, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9706-CR-00209** |
| | ) | |
| Appellee, | ) | |
| | ) | **McMINN COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. R. STEVEN BEBB, JUDGE** |
| **SAMUEL McKHEEN,** | ) | |
| | ) | |
| Appellant. | ) | **(AGGRAVATED ASSAULT)** |

FOR THE APPELLANT:

**HUBERT D. PATTY**
Patty Office Building
131 East Broadway
P.O. Box 5449
Maryville, TN  37802

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TIMOTHY F. BEHAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

**JERRY N. ESTES**
District Attorney General

**AMY REEDY**
Assistant District Attorney General
Washington Avenue
P.O. Box 647
Athens, TN  37303

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Samuel McKheen, appeals as of right following a jury trial in the Criminal Court for McMinn County. Defendant was convicted of aggravated assault and was sentenced to four (4) years in the Department of Correction. On appeal, the Defendant challenges the following:

(1) Whether the evidence was sufficient beyond a reasonable doubt to convict the Defendant of aggravated assault as charged in the indictment;

(2) Whether the trial court erred in limiting the Defendant's cross-examination of a prosecuting witness;

(3) Whether the trial court abused its discretion in allowing the victim's son to testify;

(4) Whether the State had a duty to call an eyewitness to the crime to testify and did such failure to call this witness constitute a Brady violation;

(5) Whether a juror's failure to provide information during voir dire regarding his misdemeanor convictions constitutes prejudice to the Defendant;

(6) Whether the trial court erred in giving an oral supplemental instruction to the written jury charge.

We affirm the judgment of the trial court.

## I. SUFFICIENCY OF THE EVIDENCE

The Defendant argues that the evidence was insufficient in that the great weight of the evidence is against the findings of the jury and there is no evidence to support the allegations in the indictment. Specifically, the Defendant states that "all the proof in this case shows is that the said Lisa McKheen [the victim] was not afraid of the Defendant at any time and that he was not pointing the gun at anybody nor that no [sic] gun was ever fired or that anyone expressed any fear." The indictment in the case sub judice states as follows:

Sammy McKheen on or about the 12th day of March, 1996, in McMinn County, Tennessee, and before the finding of this indictment, did

unlawfully, intentionally and knowingly by the display of a deadly weapon, to-wit: a gun, cause Lisa McKheen to reasonably fear imminent bodily injury by pointing the gun at Lisa McKheen, in violation of T.C.A. 39-13-102, all of which is against the peace and dignity of the State of Tennessee.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Lisa McKheen, Defendant's wife at the time of trial, testified that she went to her father-in-law's home on March 12, 1996 to deliver some prescription medicine. Her father-in-law, J.B. McKheen, to whom she refers to as "Dad," called her earlier

that day and asked her to pick up his prescription from Revco. It was between 3:00 and 5:00 p.m. when she arrived at his trailer. Her son, Trent Michael, and a family friend, Tommy Conn, accompanied her. She and Trent Michael walked into the home and found J.B. McKheen asleep in his hospital bed. The Defendant was asleep in a chair located across from the bed. When Lisa walked over to the hospital bed and said, "Dad, here's your medicine," the Defendant suddenly jumped up and started yelling obscenities. The Defendant announced that he was leaving and yelled some more obscenities, but Lisa said that she was "just dropping off Dad's medicine and [she was] leaving." Trent Michael was hugging his grandfather when Lisa was trying to leave, and the Defendant grabbed her and started to hit her.

Lisa told the Defendant that she was no longer afraid of him and that if he hit her she would take out a warrant for his arrest. Defendant continued to yell, and Lisa stated that "[T]his is not the place. Dad is sick." J.B. McKheen was yelling that if the Defendant was not going to sit down, then to "please leave." Lisa exited through the front door with the Defendant following and yelling at her. Lisa was on her way toward the car when the Defendant ran around and jumped onto her car. A picture was entered into evidence which showed his muddy footprints on the car and some damage to the paint. At that time, she was standing at the driver's side front fender and Trent Michael was standing just behind her. Tommy Conn was sitting in the front passenger seat.

Lisa told the Defendant that "jumping on my car is so childish," and the Defendant became very angry and ran back into the house. Lisa believed the Defendant was going inside to get a gun because she had seen the gun earlier when

-4-

her father-in-law had taken it out from underneath his bed to get the Defendant to calm down. When the Defendant came back from the house carrying a gun, Lisa was trying to get Trent Michael in the car and lay down in the back seat because she believed that the Defendant was going to shoot into the car. Lisa specifically testified that she was in fear of Defendant when he brandished the weapon, pointing it at her and her son.

Trent Michael Ward, Lisa McKheen's son, stated that he was nine (9) years old at the time of trial. On March 12, 1996, he went with his mother and Tommy to his "Pop's house." When they walked in the house, J.B. McKheen and the Defendant were both asleep, with McKheen in the hospital bed and the Defendant in the chair. Trent Michael's mother was there to give his "Pop" some medicine she had picked up at Revco. Both J.B. McKheen and the Defendant woke up, and the Defendant stated that he was leaving. Lisa McKheen stated "It's okay, I'm leaving," and then the Defendant got in her face and grabbed her by the throat. Trent Michael and his mother left, but then the Defendant ran out and jumped on the front end of their car. When they just stood there, the Defendant ran back inside. His mother said "Get in the car, he's going to get the gun." After they got in the car and were trying to pull out, the Defendant came out on the steps and was pointing the gun at the car. Trent Michael had seen this same gun earlier, on the floor by J.B. McKheen's bed.

For the defense, J.D. McKheen testified that he was the Defendant's father. He stated that on March 12, 1996, the Defendant was at home with him. Earlier that morning he had called Lisa to go by the drug store to pick up a prescription, and Lisa stated that she would bring it to him. McKheen stated that he had told both Lisa and

the Defendant not to be present in his house together because of their prior arguments. When Lisa arrived, the Defendant was sitting in a recliner sleeping and he was in his daybed. McKheen said, "Lisa, what are you doing here? Sammy is here." The Defendant woke up and the two started arguing. McKheen told them both to leave, and the Defendant stated that he would leave. Eventually, Lisa went outside and then the Defendant followed. While McKheen went to the door, he then came back to his daybed and laid down. McKheen stated that he had a shotgun, and that no other gun was present in his trailer.

The Defendant testified on his own behalf. He stated that he and Lisa were in the process of getting a divorce when this incident occurred. On March 12, 1996, he had come home from work early because it was raining and he was sick. When he arrived at his father's trailer, his father was lying in his hospital bed. The Defendant went to sleep in a nearby recliner, but awoke to the sound of Lisa cursing at him. The two argued, and the Defendant knew they were not supposed to be in his father's trailer at the same time so he offered to leave. Lisa then stated that "There ain't no use in it. I will leave . . . I don't want to be around this trash anyway." Defendant admitted that his father had a shotgun lying near his bed, and that he could hold it in one hand and shoot it. Defendant stated that he did not have a gun in his hand.

"A person commits assault who intentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). The offense of assault rises to aggravated assault if the person "uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B). "To establish these charges, the state was required to prove beyond a reasonable doubt that [the

defendant] intentionally or knowingly caused the victim[s] to fear imminent bodily injury by his use or display of a deadly weapon." State v. Wilson, 924 S.W.2d 648, 649 (Tenn. 1996). One acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). A person acts knowingly when, with respect to a result of the person's conduct, "the person is aware that the conduct is reasonably certain to cause the result." Id. at (b).

In the light most favorable to the State, there was sufficient evidence whereby a rational trier of fact could have determined beyond a reasonable doubt that the Defendant committed the offense of aggravated assault. The proof established that the Defendant walked deliberately inside his father's trailer to retrieve a gun, and then walked outside and intentionally pointed the weapon at the car the victim was driving. Aware that the victim, their son and a friend of the family were inside the car, the Defendant knowingly pointed a deadly weapon at the victim while she was in her car. The jury was entitled to infer that the Defendant's action of pointing the gun at the victim was for the purpose of causing fear of imminent bodily injury, and there was proof that the victim reasonably feared imminent bodily injury. This issue has no merit.

## II. CROSS-EXAMINATION OF WITNESSES

The Defendant argues that his trial counsel was denied adequate cross-examination of the prosecuting witness. In his brief, the Defendant fails to specify either the witness or the subject which is the basis of his argument. This issue is waived because the Defendant failed to make appropriate references to the record.

Tenn. Ct. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1988); see also Tenn. R. App. P. 27(a)(7) and (g).

### III. FAILURE TO LIST WITNESS ON INDICTMENT

Defendant has failed to address in his brief Issue 3 regarding whether it was error to permit the State to call as a witness the victim's child who had not been listed as a witness on the indictment in this case. The failure to brief this argument constitutes waiver of this issue. Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27.

### IV. EXCULPATORY EVIDENCE

Defendant contends that the State's failure to call a particular witness to the assault was a violation of the Defendant's constitutional right of due process. Defendant argues that the evidence Tommy Conn would have provided to the court was favorable to Defendant, and, consequently, would be exculpatory evidence to which he was entitled under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963).

The law does not require that the State call any particular witness in a criminal prosecution, or that it use all of the witnesses it might have available. Roberts v. State, 489 S.W.2d 263, 265-66 (Tenn. Crim. App. 1972). If the State introduces proof that there was a witness to a crime and refuses to disclose that witness' identity, and that witness might be in a position to assist the defense, then that

defendant might be effectively deprived of his constitutional right to due process. Id. at 266. As this witness was available and known to the Defendant, then the standard for the determination of whether Defendant's due process rights were violated does not apply. State v. Hartman, 703 S.W.2d 106, 114 (Tenn. 1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986) (citations omitted).

In the case sub judice, the witness in question, Tommy Conn, was known to the Defendant. While not listed on the indictment, the witness was equally available to either party. The Defendant does not argue that this witness' identity was not made known to him, only that the State had a duty to call Conn as a witness or to divulge whatever evidence he would provide to the Defendant. As stated above, the State is not under such an obligation, and the Defendant could have subpoenaed Conn to testify as a witness. Tenn. R. Crim. P. 17(d). This issue is without merit.

## V.  VOIR DIRE EXAMINATION OF JURORS

The Defendant argues that one of the jurors on the panel failed to disclose answers to questions by the Defendant's trial counsel during voir dire. The juror failed to disclose that he pled guilty to some misdemeanors several months prior to the Defendant's trial and was on probation. The Defendant contends that his constitutional due process rights were violated because this was exculpatory evidence to which he was entitled under Brady. He cites State v. Marshall, 845 S.W.2d 228 (Tenn. Crim. App. 1992), for the proposition that even if there is no

showing of bad faith on the part of the prosecution, the prosecution had a duty to disclose the statements that were exculpatory or favorable to the accused.

The Defendant's reliance upon Marshall and the case of Montesi v. Montesi, 529 S.W.2d 720 (Tenn. Ct. App. 1973), is misguided. In Montesi, a juror failed to disclose to the court that he previously sat on a jury which convicted the appellant of second degree murder of his former wife. The court found that a failure to disclose that information misled the appellant's attorney to his prejudice. Montesi, 529 S.W.2d at 724. Certainly, the information which the juror in the case sub judice failed to disclose was not of a prejudicial nature in that this information was not in any way related to the Defendant. The Marshall case involved the failure of certain witnesses in the trial to disclose statements which were exculpatory or favorable to the accused. Marshall, 845 S.W.2d at 231-32. This case is distinguishable from Marshall in that this was a juror, and not a witness, who failed to disclose information. Also, the information which the juror failed to disclose was not exculpatory.

Furthermore, if this juror failed to disclose that he earlier pled guilty to some misdemeanors and was on probation, such failure does not give rise to an inherently prejudicial situation for the Defendant. It is likely that if this particular juror had been prosecuted by the State for a misdemeanor, any prejudice he might have caused would likely have been towards the State. This juror was not asked during voir dire if he had been indicted or convicted in any court. The following excerpt of the voir dire examination by the trial court was as follows:

> It doesn't matter to me if you are close friends with the DA or Amy [State's prosecutor] or anybody else, but all I want to know is is there anything about the District Attorney's office, or any of the people that

-10-

you know in that office, that would cause you to be unfair or feel like you had to be on their side before we start this case? On the other hand, do you have any friends that have been prosecuted by the DA's office, or family or friends that have been prosecuted by the DA's office, that you are laying in wait for them here today?

The Defendant's trial counsel also questioned the jury on a similar subject:

I need to know and have your feelings on it, and that has to do with some domestic situations. Are any of you now involved in a divorce proceeding? None of you. Have any of you recently been involved in a divorce proceedings? Well, I take it all of your relationships with your spouses have been good and you've had no problems in the past. And I believe I've checked on your preliminary information on the jury list, and none of you have any lawsuits pending anywhere in the county at this time? Or any lawsuits pending anywhere?

In the absence of questions calculated to produce the specific answers, the Defendant has waived the right to object to the failure of the juror to volunteer the information. State v. Taylor, 669 S.W.2d 694, 700 (Tenn. Crim. App. 1983). This issue is without merit.

VI. ORAL JURY INSTRUCTIONS

Defendant argues that the trial court communicated orally with the jury in response to their questions during deliberations, and that this oral communication was in error. Defendant relies upon Rule 30(c) of the Tennessee Rules of Criminal Procedure in that the trial court failed to submit every word of his charge to the jury in written form, and argues this rule is not subject to waiver by either the State or the Defendant.

At the conclusion of the proof, the trial court read the written jury instructions to the jury and then sent these instructions with the jury for their deliberations. Later, the jury returned to the courtroom with a question for the trial court. The jury foreman asked for the trial court to "explain the difference between aggravated assault and just assault." The trial court's answer was as follows:

> Let me have your charge right there and let me, number one, aggravated assault is a felony and it requires intentionally, knowingly causing somebody to reasonably fear bodily injury, and the use or displaying of a deadly weapon. The simple assault merely says that the defendant intentionally and knowingly caused another to reasonably fear imminent bodily injury. It does not require the use of a weapon or displaying of a weapon. That's the basic difference, and that is a misdemeanor. Yes, ma'am.

The juror then asked the trial court to explain what the phrase "display of a weapon" meant, but the trial court refused stating that "[Y]ou have to decide what that means. That's a jury question. Use or display. Just common English, whatever you think that it means."

The trial court has the authority to respond to jury questions with a supplemental instruction. State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995) (citations omitted). In this instance, the trial court merely reread a portion of the written instructions with which the jury had already been charged. The trial court neither commented on specific evidence nor on testimony introduced at trial. While the supplemental instruction should have included an admonishment to place no undue emphasis upon it, there is no reversible error in the trial court's oral instruction. Id. at 451 (citing State v. Chance, 778 S.W.2d 457, 461-62 (Tenn. Crim. App. 1989); see Burton v. State, 217 Tenn. 62, 70-71, 394 S.W.2d 873, 876-77 (Tenn. 1965)). This issue has no merit.

After a thorough review of the record and the briefs in this case, we affirm the judgment of the trial court.

 

_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
DAVID H. WELLES, Judge


_____
DAVID G. HAYES, Judge